[Civ. No. 22617. Second Dist., Div. One. Feb. 3, 1958.]

ARTISTS' EMBASSY (a Corporation), Respondent, v.
J. W. HUNT et al., Appellants.

 

 ██ 

Harold Rubins for Appellants.

I. B. Kornblum for Respondent.

DORAN, J.—The present appeal is from that part of a judgment which awarded plaintiff $4,607.54 as damages resulting from the defendants' negligent delay in transporting theatrical scenery, equipment, costumes, etc. from Los Angeles to San Francisco. There is no appeal from that part of the judgment which awarded the defendants $976.49 on a counterclaim.

It appears that from May 21 through June 23, 1956, the plaintiff had presented the play "Will Success Spoil Rock Hunter" at the Carthay Circle Theatre in Los Angeles, and on May 9th, had contracted to present the same play at the Curran Theatre in San Francisco for three weeks commencing June 25, 1956. Plaintiff closed the show in Los Angeles on the night of June 23d and delivered the scenery, etc., to the defendant common carriers for delivery at the Curran Theatre at 8 a. m. Monday morning, June 25, 1956, so that the play could open at 8:30 p. m. that evening. Defendants were familiar with the necessity of delivering theatrical properties in sufficient time for the show to open.

The defendants, appellants herein, failed to deliver the properties at San Francisco until 9:55 Monday evening, for which reason the first night's performance was not given. The trip could normally be made in 12 hours in place of the 33 hours consumed on this occasion. It was appellants' claim that the delay was due to unforeseeable mechanical breakdowns necessitating the rental of other equipment. Appellants however, "concede the fact that the record will support a finding of negligence."

The trial court found that as a result of defendants' failure to make the delivery, "and despite the fact that plaintiff

received no income from said lost performance, ·plaintiff was compelled to pay salaries and compensation to actors, press agents, pro rata cost of insurance, its share of advertising, waiting time of stage hands on Monday, June 25, 1956, . . . contractual amount to Curran Theatre for rental for lost performance and contractual penalty to Curran Theatre because of weekly gross falling below contractual minimum, the total amount paid for aforesaid being $2,607.54; that the press notices for the performance given on June 26, 1956 were unfavorable to the management, caused in part by the fact that the cast and company had not been afforded the usual opportunity to rehearse prior to the giving of said performance, and because of the disorganized condition resulting from defendants' failure to deliver the scenery . . . as agreed upon. That as a result of the unfavorable reception of the play in San Francisco, California, the plaintiff was compelled to cancel the third week of the contract period with the Curran Theatre . . . and as a result thereof is liable for the cancelled rental period under the terms of said contract in the sum of $2,000.00.''

The contract with the Curran Theatre provided that the theatre will pay plaintiff ''70% of the gross receipts, or 65% . . if the weekly gross receipts are less than $12,000.00.'' It also provides that in the event the play is closed, the plaintiff will pay the rent of the theatre for the time it is closed.

Appellants contend that there is no competent evidence of damage to support the judgment; ''that the award of theatre rental and house costs and one-eighth of plaintiff's weekly operating costs was prejudicially erroneous.'' It is also argued that ''there is no competent evidence that the gross receipts for the first week would have been greater than $12,000, and therefore the award of $600.00 for the additional 5% rental was prejudicially erroneous''; likewise that ''there was no competent evidence that the failure to present the first night's performance caused the show to be closed one week early, and therefore the award of $2,000.00 for the theatre rent for the third week was prejudicially erroneous.'' Appellants also complain that the admission in evidence of newspaper clippings of critics' reviews, was erroneous.

One of appellants' foremost contentions is that the measure of damages is fixed by Civil Code, section 3317, which provides that ''The detriment caused by a carrier's delay in the delivery of freight is deemed to be the depreciation in the

intrinsic value of the freight during the delay, and also the depreciation, if any, in the market value thereof, otherwise than by reason of a depreciation in its intrinsic value, at the place where it ought to have been delivered, and between the day at which it ought to have been delivered and the day of its actual delivery.'', Appellants then argue that ''The evidence does not disclose any such depreciation and therefore does not support the findings on damages or the judgment.''

This argument must be deemed specious and untenable as applied to the circumstances of the instant case. ▪ As respondent points out, section 3317 of the Civil Code, ''applies only where the criterion for measuring damages is appropriate —where the goods are perishable, and/or they have a market for the use intended, by which their value can be determined.'' In the present litigation plaintiff does not claim that the scenery and properties were reduced in market value by reason of defendants' delay. The properties were not purchased by plaintiff for resale, but to be used in the giving of the performance, and the measure of damages would be the loss sustained, arising from the defendants' negligent action, rather than any difference in value of the properties.

, ▪ More applicable to the present situation is section 3355 of the Civil Code which provides that ''Where certain property has a peculiar value to a person recovering damages for deprivation thereof, or injury thereto, that may be deemed to be its value as against one who had notice thereof, or against a willful wrongdoer.''

, ▪ The trial court properly allowed such items of damage as were found to proximately flow from the defendants' delay. Such damages included rental of the theatre for the missed performance, house costs and one-eighth of the weekly operating costs. So likewise, the award of $600 for additional rental and $2,000 for the last week's rental, cannot be deemed erroneous since they were expenditures made and obligations incurred in the preparation of performance, and within the contemplation of the parties. Defendants were admittedly familiar with the necessity of delivering theatrical properties in sufficient time for the performance; costs and theatre rental were matters reasonably to be anticipated.

Appellants' contention that these items of damage were ''speculative in nature and not supported by any competent evidence'' cannot be sustained. The record discloses evidence to the effect that a delayed opening can cause hostility in the critics; that hostile critics can cause poor business, and that

the show was prematurely closed because of poor business,—causal links from appellants' breach to the loss sustained. The critics' reviews of the show were not admitted in evidence for the purpose of proving the truth of the matter contained therein, but merely to show adverse criticism; the admission thereof did not constitute prejudicial error. No merit is found in any of the appellants' contentions.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.